IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION


CURTIS M. REHM                                              PLAINTIFF


                 v.                       CIVIL NO. 06-3021


MICHAEL J. ASTRUE,[1] Commissioner
Social Security Administration                              DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Curtis M. Rehm brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act).

**Procedural Background:**

The applications for DIB and SSI presently before this court were filed on January 26, 2004, alleging an inability to work since October 20, 2003, due to pulmonary fibrosis and chronic back pain. (Tr. 13, 45-47). An administrative hearing was held on July 15, 2005. (Tr. 255-273). Plaintiff was present and represented by counsel.

By written decision dated September 23, 2005, the ALJ found that plaintiff has an impairment or combination of impairments that are severe. (Tr. 18). However, after reviewing

---

[1] Michael J. Astrue became the Social Security Commissioner on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for acting Commissioner Jo Anne B. Barnhart as the defendant in this suit.

all of the evidence presented, he determined that plaintiff's impairments do not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 19). The ALJ found plaintiff retained the residual functional capacity (RFC) to lift/carry ten pounds occasionally, less than ten pounds frequently; to stand/walk two hours during an eight-hour workday; to sit six hours in an eight-hour workday; and to avoid concentrated exposure to dust, fumes, odors, gases and poor ventilation. (Tr. 19). With this RFC, the ALJ determined plaintiff could perform other work as an escort vehicle driver, assembler and an interviewer.

Plaintiff appealed the decision of the ALJ to the Appeals Council. Plaintiff's request for review of the hearing decision by the Appeals Council was denied on March 30, 2006. (Tr. 4-7). When the Appeals Council declined review, the ALJ's decision became the final action of the Commissioner. Plaintiff now seeks judicial review of that decision. (Doc. #1). Both parties filed appeal briefs and this case is before the undersigned for report and recommendation. (Doc. # 8,9).

**Evidence Presented:**

At the administrative hearing before the ALJ on July 15, 2005, plaintiff testified he was thirty-nine years of age. (Tr. 259). Plaintiff testified he obtained his general equivalency diploma and had attended college after his alleged onset of disability. (Tr. 259). The record reflects plaintiff's past relevant work consisted of work as a truck driver. (Tr. 89, 259-260).

The pertinent medical evidence in this case reflects the following. On December 19, 2003, plaintiff established himself as a new patient at the Boston Mountain Rural Health Center. (Tr. 195). Plaintiff complained of shortness of breath, chronic low back pain, and a pilonidal

2

cyst. Plaintiff reported he had a great deal of stress and recently quit his job per a physicians recommendation because of the stress. Upon examination, Dr. Sarah L. Sullivan noted plaintiff's heart had a regular rate and rhythm.  Plaintiff's lungs were clear to auscultation bilaterally with very decreased air movement overall. Dr. Sullivan found severe clubbing of the fingernails of both hands. An examination of the back showed some tenderness to palpation over the L4-L5 region with exquisite tenderness to palpation in the spinal erector muscles on the sides of his back.

In a letter dated December 31, 2003, Dr. William P. Galli states plaintiff has a history of shortness of breath. (Tr. 151).  Dr. Galli noted plaintiff's report that he had been experiencing increased shortness of breath over the last five years especially with any type of physical exertion. Dr. Galli reported plaintiff's medications consisted of pain medicine and albuterol. He also noted plaintiff smoked two packages of cigarettes a day. Dr. Galli indicated plaintiff had extremely decreased breath sounds bilaterally. Plaintiff was also found to have marked clubbing of the extremities but no cyanosis or edema. (Tr. 152).  Dr. Galli assessed plaintiff with a possibility of underlying lung disease and alpha-1 antitrypsin disease. Dr. Galli indicated that he wanted plaintiff to return in two weeks.

Progress notes dated January 2, 2004, indicate plaintiff returned for a follow-up for his chronic back pain and lung disease. (Tr. 194).  Plaintiff reported he was seeing Dr. Galli for his lung problem.  Plaintiff reported he was out of pain medication and that his back pain was terrible. Dr. Sullivan noted plaintiff's back pain was concentrated at approximately L2-L3 with radiation to the musculature there and that she did agree to give him pain medication on a pain contract. Upon examination, Dr. Sullivan noted plaintiff's lungs were clear to auscultation

3

bilaterally.  Dr. Sullivan noted palpation of the lower back showed some tenderness without radiculopathy at about L2-L3 with some rigidness of the musculature just over the iliac crest. Plaintiff's reflexes were 2+ and equal in the lower extremities. Dr. Sullivan noted sensation to touch was grossly intact and that plaintiff's muscle strength was essentially 5/5 in the lower extremities.

On January 13, 2004, plaintiff was admitted into the Ozark Health Medical Center to undergo surgery to excise a pilonidal cyst. (Tr. 100).  Intake records indicate plaintiff's report that he had chronic lung and back problems. He also reported that he smoked one package of cigarettes a day. (Tr. 103).  Upon discharge, plaintiff was given prescriptions for Hydrocodone for pain as needed and Cipro. (Tr. 109).  Plaintiff was to resume activities as tolerated and to follow-up with Dr. S.P. Schoettle on the 27th.

In a letter dated January 19, 2004, Dr. Galli reported plaintiff came in for a follow-up. (Tr. 150).  Dr. Galli stated plaintiff's PFTs demonstrated some mild to moderate restriction with a slight reduction in diffusion capacity. Plaintiff's spirometry did not show any signs of obstruction. A CT scan demonstrated a diffuse more of an alveolar infiltrative pattern. Dr. Galli found no signs of pulmonary fibrosis. Dr. Galli diagnosed plaintiff with a possibility of interstitial lung disease versus hypersensitivity pneumonitis. Dr. Galli recommended a VATS procedure for a lung biopsy.  Dr. Galli noted plaintiff's request that this procedure be performed over his spring break.

Progress notes dated February 7, 2004, indicate plaintiff needed a medication refill. (Tr. 193).  Dr. Sullivan noted plaintiff was only taking the inhaler she had prescribed and that

4

AO72A
(Rev. 8/82)

plaintiff reported he was doing his back exercises but could not tell much difference in his pain. Dr. Sullivan noted plaintiff's lungs were clear and that he did not have edema in his extremities.

Progress notes dated March 6, 2004, report plaintiff's complaint of a cold. (Tr. 190). Plaintiff also requested refills of his Hydrocodone and Soma. Plaintiff also complained of pain in his spine after his epidural for his pilonidal cyst removal about one month ago.

On March 16, 2004, plaintiff underwent an examination by Dr. Ray E. Stahl. (Tr. 121-122). Plaintiff reported that he was a truck driver. Plaintiff reported that for the past six or seven years he had had increasing problems with shortness of breath and originally believed this was due to his being out of shape. Plaintiff reported when he exerts himself he experiences dizziness and significant dyspnea. At the time of the evaluation plaintiff was taking a Hydrocodone and Soma compound and was smoking one package of cigarettes a day. Plaintiff also reported he was a student at a university. Upon examination, Dr. Stahl noted plaintiff was well-developed, well nourished and in no acute distress. (Tr. 122). Plaintiff's respiratory effort was normal at rest and his breath sounds were equal. Plaintiff had regular heart rate and rhythm with no murmurs. Plaintiff was noted to have a normal gait and normal strength. Dr. Stahl indicated plaintiff had an abnormal CAT scan with altered pulmonary function tests and recommended a right chest thoracoscopy with lung biopsy.

On March 17, 2004, plaintiff was admitted into the Baxter Regional Medical Center (Baxter) and underwent a right chest thoracoscopy with wedge resection of right lower lobe. (Tr. 120). Postoperatively plaintiff did fairly well except for moderate pain in the right chest. Subsequently plaintiff developed thrombophlebitis at an IV site and underwent exploration of the right antecubital fossa and left upper extremity. (Tr. 117-119, 114-115). Dr. Stahl reported

5

plaintiff had slow improvements and was started on Coumadin.(Tr. 116). Plaintiff was discharged from Baxter on April 2, 2004, with the diagnoses of fibrotic lung disease and thrombophlebitis. (Tr. 116). Dr. Stahl noted plaintiff would follow up with Dr. Galli for his pulmonary disease and that plaintiff would return to him for a follow-up for his arm wound.

Progress notes dated April 3, 2004, report plaintiff was in for a follow-up from his lung biopsy. (Tr. 189). Dr. Sullivan noted plaintiff subsequently had thrombophlebitis in his right arm and was in for a dressing change. Plaintiff reported that his dressing changes were quite painful and that he received Demerol prior to each change. Plaintiff also requested a refill of his Hydrocodone.  Plaintiff reported he had been given Percocet while in the hospital and that he could not take this medication because it caused nausea. Plaintiff's dressing was changed again on April 5, 2004. (Tr. 188).

Plaintiff also saw Dr. Sullivan on April 5, 2004. (Tr. 187).  Plaintiff reported he was still having some painful swelling where his chest tubes were for his surgery. Dr. Sullivan noted that plaintiff's surgeon indicated this was due to the trauma to the nerves and scar tissue.

Progress notes dated April 6, 2004, note plaintiff recently underwent a wedge resection of the lung which revealed a fibrotic type lung disease. (Tr. 185).  Dr. Stahl noted that postoperatively plaintiff had a problem with phlebitis of the right arm which led him to take heparin and Coumadin. Upon examination, Dr. Stahl noted plaintiff's wounds were healing nicely and that he was doing much better. Dr. Stahl indicated plaintiff would return in one week to remove his stitches.  Dr. Stahl noted Dr. Galli would be following plaintiff's lung disease.

An x-ray taken on April 19, 2004, revealed a continued thrombus in the right basilic vein. (Tr. 125).

On April 26, 2004, plaintiff entered the North Arkansas Regional Medical Center (NARMC) emergency room with complaints of lower back pain that started after lifting. (Tr. 163). Plaintiff also complained of right-sided chest pain following a lung biopsy. A chest x-ray revealed a normal heart and mediastinum and clear lungs. Plaintiff was administered Demerol and Phenergan and given a prescription for Hydrocodone. (Tr. 165-166).

In a letter dated April 30, 2004, Dr. Galli stated plaintiff came to his office for a follow-up on his wedge resection. (Tr. 149). Dr. Galli noted plaintiff was doing relatively well but continued to get short of breath with exertion. Dr. Galli stated that his examination of plaintiff revealed decreased breath sounds with a significant amount of crackle at the bilateral bases. Dr. Galli also noted plaintiff had some clubbing, cyanosis and edema in his extremities. Dr. Galli diagnosed plaintiff with underlying pulmonary fibrosis and tobacco dependency. He indicated plaintiff would be started on steroids and he would recheck plaintiff's pulmonary function studies in six months. Dr. Galli also told plaintiff that the cessation of smoking would actually help most of his lung function. Plaintiff was to return for a follow-up appointment in thirty days.

Plaintiff entered the NARMC emergency room on May 11, 2004, with complaints of extreme pain in the lower back. (Tr. 157). Plaintiff reported he underwent back surgery three years ago. Plaintiff was diagnosed with chronic back pain. He was administered medication and discharged. His home medications record indicate he was taking Hydrocodone, Soma, Prednisone and Protonix. (Tr. 160).

On May 21, 2004, plaintiff entered the St. John's Carroll Regional Medical Center emergency room with complaints of back pain. (Tr. 218). Plaintiff reported he injured himself

7

lifting up a box. Plaintiff was administered Demerol and Vistaril and discharged home in improved condition. (Tr. 219-220).

Progress notes dated June 4, 2004, report plaintiff was in for a medication refill. (Tr. 186). Plaintiff reported he was feeling tired.

On June 14, 2004, Dr. Sullivan completed a physical residual functional capacity questionnaire. (Tr. 179-182). Dr. Sullivan indicated plaintiff had been diagnosed with fibrotic lung disease, chronic lumbar pain and a pilonidal cyst. Dr. Sullivan noted there was progression of plaintiff's lung disease and that his other problems were resolved or stable. Dr. Sullivan noted plaintiff had tenderness to palpation without radiculopathy at L2-L3 with some palpable spasm. Dr. Sullivan found plaintiff's muscle strength to be essentially normal. Dr. Sullivan opined plaintiff's pain would rarely interfere with attention and concentration. (Tr. 180). She also opined plaintiff could tolerate moderate stress. Dr. Sullivan opined plaintiff was able to walk three city blocks without rest or severe pain; to sit for thirty minutes at one time for a total of four hours in an eight-hour work day; and to stand for thirty minutes at one time for a total of four hours in an eight-hour workday. Dr. Sullivan opined plaintiff would need to include periods of walking during the workday. Specifically, she opined plaintiff would need to walk every thirty minutes for about five minutes. She also found plaintiff would need a job that allowed shifting of positions at will. Dr. Sullivan indicated plaintiff would not need to take unscheduled breaks during the workday. She opined plaintiff would be able to frequently lift ten pounds, occasionally lift twenty pounds and rarely lift fifty pounds. Dr. Sullivan opined plaintiff could frequently look down, turn his head right to left, look up and hold his head in a static position; and could occasionally twist, stoop, crouch/squat, climb ladders and climb stairs. (Tr. 181-182). Dr.

8

Sullivan opined plaintiff would have no limitations with reaching, handling or fingering. She further opined plaintiff would miss about one day per month as a result of his impairments.

On July 1, 2004, Dr. Galli completed a pulmonary residual functional capacity questionnaire. (Tr. 202-205). Dr. Galli diagnosed plaintiff with pulmonary fibrosis. He indicated plaintiff's medications consisted of prednisone and albuterol. Dr. Galli found plaintiff's symptoms to include shortness of breath, orthopnea and fatigue. Dr. Galli opined plaintiff's impairment would frequently interfere with attention and concentration and that plaintiff was capable of low stress jobs. Dr. Galli opined plaintiff's prognosis was stable. Dr. Galli indicated plaintiff could sit for two hours at one time and at least six hours in an eight-hour workday; and could stand/walk for one hour at one time and about two hours in an eight-hour workday. (Tr. 204). Dr. Galli indicated plaintiff would need to take unscheduled breaks during the workday. Dr. Galli did not opine as to what plaintiff was able to lift and carry. Dr. Galli opined plaintiff was to avoid all exposure to cigarette smoke, soldering fluxes solvents/cleaners, fumes, odors, gases and chemicals; to avoid moderate exposure to extreme cold, extreme heat, high humidity and dust; and to avoid concentrated exposure to perfumes. Dr. Galli thought plaintiff's impairment would produce good and bad days and that plaintiff would miss about four days per month.

Progress notes dated August 3, 2004, report plaintiff was in for a medication refill. (Tr. 244). Plaintiff reported instead of going to his appointment with Dr. Galli he called Dr. Galli and asked him to reduce his prednisone. Dr. Sullivan noted plaintiff was still having lumbar pain and pain at the site where his pilonidal cyst was removed. Dr. Sullivan stated that as soon as plaintiff

received some financial assistance she would like to have plaintiff start physical therapy and to taper off his pain medications.

Progress notes dated September 3, 2004, report plaintiff was in for a follow-up for his back pain. (Tr. 242). Dr. Sullivan noted plaintiff was unable to afford physical therapy. Plaintiff reported he was in school and was doing pretty well. Plaintiff also wanted to taper his Prednisone.

Progress notes dated November 2, 2004, report plaintiff came in for a medication refill. (Tr. 240). Plaintiff reported he had been in jail for not paying child support. Plaintiff reported his left eye had been draining for about a month. Plaintiff reported that he stopped smoking while he was in jail and has only smoked once or twice since his release. Dr. Sullivan encouraged plaintiff to completely discontinue smoking. Dr. Sullivan noted plaintiff's blood pressure was elevated and started him on Accupril.

Progress notes dated December 14, 2004, report plaintiff was in for a follow-up for his Accupril. (Tr. 237). Dr. Sullivan noted there had been some difficulty with plaintiff's medication refill because he wanted to refill his prescription in Texas. Plaintiff reported he went to an emergency room in Texas and was given some medication. Plaintiff reported a new pain that started in the left shoulder right at the acromioclavicular (AC) joint. He also reported a burning under the left shoulder blade. Upon examination of plaintiff's left shoulder, Dr. Sullivan noted some mild tenderness to palpation in the AC joint without crepitance. Plaintiff also had tenderness to palpation in the left trapezius muscle particularly in the lower portion just under the left scapula.

AO72A
(Rev. 8/82)

Progress notes dated January 21, 2005, report plaintiff was in for a follow-up on his chronic lumbar pain. (Tr. 234). Dr. Sullivan noted plaintiff had been getting more exercise and had cut back on his medication. Dr. Sullivan noted plaintiff's blood pressure had been good. Plaintiff expressed concerns about a small knot on his upper abdomen. Dr. Sullivan examined plaintiff's abdomen and concluded the area of concern was plaintiff's xyphoid process.

Progress notes dated February 22, 2005, report plaintiff had not taken his blood pressure medication for the day. (Tr. 232). Plaintiff reported that he had difficulty taking his blood pressure medication on time. Plaintiff also complained of chronic lumbar pain. Dr. Sullivan told plaintiff he really needed to decrease his pain medication and noted plaintiff was reluctant to do this.

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the

11

evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience.  *See* 20 C.F.R. §§ 404.1520, 416.920.  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his  residual functional capacity.  *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520, 416.920.

12

**Discussion:**

We first address the ALJ's assessment of plaintiff's subjective complaints.  The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to:  (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions.  *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  *Id.*  As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible.  The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

 The record establishes plaintiff has been diagnosed with pulmonary fibrosis and chronic back pain.  With regard to plaintiff's lung impairment, in December of 2003, plaintiff complained of shortness of breath especially with any type of physical exertion. (Tr. 151).  After examining plaintiff, Dr. Galli recommended plaintiff undergo testing.  In January of 2004, Dr. Galli noted plaintiff's PFTs demonstrated some mild to moderate restriction with a slight

13

reduction in diffusion capacity and a CT scan revealed an alveolar infiltrative pattern. Plaintiff was then seen by Dr. Stahl in March of 2004, who recommended and performed a right chest thoracoscopy with wedge resection of the right lower lobe. In April of 2004, Dr. Galli noted plaintiff was doing relatively well but continued to get short of breath with exertion. Plaintiff's fibrotic lung disease was reported as stable in April of 2005. (Tr. 233). While the evidence clearly establishes plaintiff does have a severe lung impairment the record does not establish that this impairment is disabling.

With regard to plaintiff's back pain, the record shows plaintiff has been treated conservatively. *See Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998); *See Robinson v. Sullivan*, 956 F.2d 836, 840 (8th Cir. 1992) (course of conservative treatment contradicted claims of disabling pain). On December 19, 2003, plaintiff exhibited tenderness to palpation over the L4-L5 region and spinal erector muscles. In January of 2004, Dr. Sullivan noted tenderness to palpation at about the L2-L3 region with some rigidness of the musculature over the iliac crest. At that time, Dr. Sullivan noted plaintiff's sensation to touch was grossly intact and plaintiff's muscle strength was essentially 5/5 in his lower extremities. Plaintiff also sought treatment for his back pain in the emergency room and was administered Demerol. In January of 2005, Dr. Sullivan noted plaintiff had been doing more of his back exercises and had cut back on some of his medication. In February of 2005, Dr. Sullivan noted plaintiff continued to complain of back pain. She further opined plaintiff needed to decrease his pain medication. Thus, while plaintiff may indeed experience some degree of pain, the medical evidence indicates that his condition is not of a disabling nature. *See Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997)

(upholding ALJ's determination that claimant was not disabled even though she had in fact sustained a back injury and suffered some degree of pain).

The record shows plaintiff continued to smoke after he was diagnosed with a lung impairment despite his treating physicians recommendations that he discontinue smoking. *See Dunahoo v. Apfel,* 241 F.3d 1033,1038 (8th Cir. 2001)(claimant's failure to follow prescribed course of treatment weighed against credibility when assessing subjective complaints of pain). In November of 2004, plaintiff reported to Dr. Sullivan that he stopped smoking while in jail but on that same office visit admitted to smoking after his release.

Plaintiff's reports concerning his daily activities are also inconsistent with his claim of disability. At the hearing before the ALJ, plaintiff testified that he spends most of his time watching television at his or his father's house and watching his children play on the weekends. (Tr. 267). Plaintiff testified on a good day he can take his children to the store and on bad days he watches television. (Tr. 268). In a Supplemental Interview Outline dated March 5, 2004, plaintiff reported that he was able to take care of his personal needs and to do the laundry and dishes, change the sheets, iron, vacuum, sweep, and take out the trash. (Tr. 60). Plaintiff noted that he was able to drive, walk for exercise and errands, shop for groceries and clothes, and perform other errands. (Tr. 60-61). Plaintiff indicated that he was able to prepare meals, and he reported that preparing meals did not take any longer than before his alleged disability began. (Tr. 61). Plaintiff further reported that on an average day he went to school. (Tr. 63). This level of activity belies plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a plaintiff's subjective allegations of disabling pain. *Cf. Gray v.* Apfel, 192 F.3d 799, 804 (8th Cir. 1999) (plaintiff's

15

ability to care for himself, do household chores, drive a car short distances, and perform other miscellaneous activities was inconsistent with his subjective complaints); *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ALJ properly discounted claimant's subjective complaints on basis that claimant was able to care for child, drive car, and sometimes go to grocery store); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television and drive indicated her pain did not interfere with her ability to concentrate; claimant's visits with her children indicated she could engage in some social functioning). The record further establishes plaintiff was able to take college courses after his alleged onset date and only stopped taking courses because the school would not allow him to continue after he was released from jail. (Tr. 262).

Therefore, although it is clear that plaintiff suffers with some degree of pain and shortness of breath, he has not established that he is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning his daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

We will next discuss the ALJ's RFC determination.  It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence."  *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000).  RFC is the most a

16

person can do despite that person's limitations. 20 C.F.R. § 416.945(a)(1).  A disability claimant

has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th

Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record,

including medical records, observations of treating physicians and others, and the claimant's own

descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir.

2004); *Guilliam v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from

symptoms such as pain are also factored into the assessment. 20 C.F.R. § 416.945(a)(3). The

United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual

functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).

Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical

evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,*

353 F.3d 642, 646 (8th Cir. 2003).

In finding plaintiff able to perform a significant range of sedentary, the ALJ considered

plaintiff's subjective complaints, the medical records of his treating physicians, and the

evaluations of non-examining medical examiners.

Plaintiff argues the ALJ erred in not giving controlling weight to the RFC assessments

completed by Drs. Galli and Sullivan. While an ALJ's failure to consider or discuss a treating

physician's opinion that a claimant is disabled is error when the record contains no contradictory

medical opinion, *Black v. Apfel,* 143 F.3d 383, 386 (8th Cir. 1998), an ALJ may discount or

disregard such an opinion if other medical assessments are supported by superior medical

evidence, or if the treating physician has offered inconsistent opinions. *Prosch v. Apfel*, 201 F.3d

1010, 1012-13 (8th Cir. 2000). A treating physician's opinion is due "controlling weight" if that

17

opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" *Id.* at 1012-13 (quoting 20 C.F.R. § 404.1527(d)(2) 2000). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).

While the ALJ's terminology that plaintiff's treating physicians provided a courtesy in completing the RFC questionnaires may be inaccurate, the record does reflect that when compared with the record as a whole and the assessments individually there are inconsistencies with the findings made by both Drs. Galli and Sullivan. *Bentley v. Shalala,* 52 F.3d 784, 787 (8th Cir. 1995) ("It is the ALJ's function to resolve conflicts among 'various treating and examining physicians."). For example, Dr. Galli reported that plaintiff would be likely to be absent from work about four days per month, and he indicated that plaintiff would sometimes need to take unscheduled breaks during the day. (Tr. 204-205). Dr. Sullivan's report directly conflicts with this assessment in that she determined that plaintiff would be absent from work only one day a month, and she specified that plaintiff would not need to take any unscheduled breaks during an eight-hour workday. (Tr. 181-182). Similarly, although Dr. Galli found that plaintiff would frequently experience pain or other symptoms severe enough to interfere with his attention and concentration, Dr. Sullivan determined that plaintiff's impairments would rarely interfere with his attention or concentration (Tr. 180, 203). Dr. Sullivan also opined plaintiff would need to walk around for five minutes every thirty minutes, however this is contradicted by both Dr. Galli's opinion that plaintiff would be able to sit for more than two hours at one time and Dr. Sullivan's own opinion that plaintiff would not need to take any unscheduled breaks

18

during an eight-hour workday.  After thoroughly reviewing plaintiff's argument and the record, we find that substantial evidence of the record supports the ALJ's RFC determination.

Finally, we find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. (Tr. 92-94).  *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996).  Accordingly, we find that the vocational expert's answers to the interrogatories constitute substantial evidence supporting the ALJ's conclusion that plaintiff's impairments do not preclude him from performing other work as an escort vehicle driver, assembler and an interviewer.  *See Pickney*, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**Conclusion:**

Based on the foregoing, we recommend affirming the ALJ's decision and dismissing plaintiff's case with prejudice.  **The parties have ten days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 1ST day of March 2007.

/s/ *J. Marschewski*

HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)